IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:09-cr-00013-MR-WCM-8

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KENNETH LEE FOSTER, )<br>)<br>Defendant. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduction of Sentence [Doc. 986], as amended [Docs. 987, 989].

**I.    BACKGROUND**

Between January 2008 and February 2009, the Defendant Kenneth Lee Foster was the leader of a drug-trafficking organization that distributed large quantities of crack cocaine in and around Buncombe County, North Carolina. [Doc. 338: PSR at ¶¶ 7, 10-16, 18-19]. The Defendant bought powder cocaine from four separate sources of supply and cooked the powder cocaine into crack cocaine for distribution. [Id. at ¶ 19]. The Defendant controlled the planning and hierarchy of his drug-trafficking organization, established the price purchasers paid his subordinates, and generally

exercised control and authority over others. [Id.]. The Defendant also described himself as "the 'king' of Asheville" and told one of his sources that he "ruled the city." [Id. at ¶ 10]. At the time the Defendant committed these offenses, he had previously been convicted of attempted armed robbery, two counts of second-degree kidnapping, and possession with intent to manufacture, sell, and deliver a schedule II controlled substance. [Id. at ¶ 47-48].

A federal grand jury indicted the Defendant and fourteen others in connection with this drug-trafficking conspiracy. The Defendant was charged in Count One of the Indictment with conspiring to possess with intent to distribute at least 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and in Count Two with using a communication facility "in committing and in causing and facilitating the commission of acts alleged in COUNT ONE," in violation of 21 U.S.C. § 843(b). [Doc. 12: Indictment]. The Government filed an information under 21 U.S.C. § 851, notifying the Defendant and this Court that it intended to seek an enhanced penalty based on the Defendant's prior conviction for a felony drug offense. [Doc. 160: Amended Notice].

A jury found the Defendant guilty of both offenses and found that at least 4.5 kilograms of crack cocaine were reasonably foreseeable to him

during his participation in the drug-trafficking conspiracy. [Doc. 299: Jury Verdict].

In advance of sentencing, a probation officer with the Court's probation office submitted a Presentence Report (PSR) and calculated a base offense level of 38 based on the Defendant's responsibility for at least 4.5 kilograms of crack cocaine. [Doc. 338: PSR at ¶ 26]. The probation officer added four offense levels because the Defendant was a leader of the drug-trafficking organization. [Id. at ¶ 29]. The probation officer also found that the Defendant was a career offender based on his prior kidnapping, attempted armed robbery, and drug-trafficking offenses. However, because the drug-trafficking guideline, U.S.S.G. § 2D1.1, yielded a higher offense level than the career-offender guideline, U.S.S.G. § 4B1.1, the higher offense level was applied. [Id. at ¶ 39]. The PSR noted that the Sentencing Guidelines advised a sentence of between 360 months and life in prison based on a total offense level of 42 and a criminal history category of VI.[1] [Id. at ¶ 88].

---

[1] Without the career offender enhancement, the Defendant's criminal history category was III. [Doc. 338: PSR at ¶ 51].

3

Case 1:09-cr-00013-MR-WCM    Document 998    Filed 10/04/22    Page 3 of 12

The Defendant was sentenced in August 2009.[2]  At sentencing, this Court adopted the PSR and sentenced the Defendant to 360 months' imprisonment for the drug-trafficking offense and to a concurrent term of 96 months' imprisonment for the communication-facility offense. [Doc. 347: Judgment at 2; Doc. 348: Statement of Reasons at 1].

On August 3, 2010, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, which increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841.  Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams."  Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage.  Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, was enacted.  Section 404 of the Act gave retroactive effect to the

---

[2] The Defendant was sentenced by the Honorable Lacy H. Thornburg.  Upon Judge Thornburg's retirement, this case was reassigned to the undersigned.

4

changes made by Sections 2 and 3 of the Fair Sentencing Act. The Defendant now moves for a reduced sentence to time served pursuant to Section 404 of the First Step Act. [Doc. 986; as amended by Docs. 987, 989]. While agreeing that the Defendant is eligible for a reduction in his sentence, the Government argues that his motion should nevertheless be denied. [Doc. 992]. On August 31, 2022, the Defendant filed a Reply in support of his motion. [Doc. 996].

Having been fully briefed, this matter is now ripe for disposition.

**II.   DISCUSSION**

Section 404 of the First Step Act authorizes district courts to "impose a reduced sentence" for certain "covered offense[s]." First Step Act, § 404(b), 132 Stat. at 5222. Section 404(a) of the Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." Id. § 404(a). Section 404(b) then provides that the court " may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. § 404(b). The First Step Act makes clear, however, that any such decision is a matter of the court's discretion. Id. § 404(b), (c).

5

When presented with a motion for relief under Section 404 of the First Step Act, a district court must first determine whether the sentence qualifies for review on the merits. United States v. Gravatt, 953 F.3d 258, 262 (4th Cir. 2020). Here, the Defendant undoubtedly qualifies for review, as he was sentenced for a violation of § 841(b)(1)(A); his motion for a reduction in sentence is addressed to the court that imposed the sentence; and the sentence has not been previously reduced under the First Step Act.

Having determined that the Defendant's sentence qualifies for review on the merits, the Court must now determine whether to exercise its discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed. See First Step Act, § 404(b), 132 Stat. at 5222. The first step in the exercise of this discretion is to apply the provisions of the Fair Sentencing Act of 2010 in calculating the Defendant's advisory Guidelines range. See Concepcion v. United States, 142 S. Ct. 2389, 2402 (2022) ("[T]he language Congress enacted in the First Step Act specifically requires district courts to apply the legal changes in the Fair Sentencing Act when calculating the Guidelines if they chose to modify a sentence."). United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021) ("The stated policy governing the exercise of this discretion is to bring a sentence that is qualified for reduction 'in line' with a sentence that the court

6

would have imposed under the Fair Sentencing Act had it been in effect."). In making this calculation, the Court must apply *only* the retroactive provisions of the Fair Sentencing Act. See Concepcion, 142 S. Ct. at 2402 n.6 ("A district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act.").[3]

Using this newly calculated Guidelines range as a "benchmark," the Court may then reconsider the 18 U.S.C. § 3553(a) factors, including any "postsentencing conduct or nonretroactive changes [in the law] in selecting or rejecting an appropriate sentence ...." Id. This analysis, however, "is not intended to constitute a plenary resentencing." Lancaster, 997 F.3d at 175.

Applying The Fair Sentencing Act of 2010 as if it had been in effect at the time of the Defendant's offense would not provide any change in the Defendant's advisory guidelines range. The Defendant was found responsible for more than 4.5 kilograms of cocaine base resulting in a base offense level of 34. Due to the four-level enhancement for his leadership role, his total offense level became 38. These calculations are unaffected

---

[3] The Court notes that the 4th Circuit in Lancaster held that the intervening changes in the law should be considered in recalculating the Guideline Range. However, the Supreme Court in Concepcion rejected this view, 142 S.Ct. at 2402 n.6, as none of the Justices' opinions construed the First Step Act in this manner.

by the Fair Sentencing Act of 2010. Based on his status as a career offender, the Defendant's criminal history category remains unchanged at VI, resulting in a Guidelines range of 360 months to life. The application of The First Step Act of 2018 provides no change in this analysis.

The Defendant contends that he is nevertheless entitled to a reduced sentence. Specifically, he argues that in light of intervening, non-retroactive changes to the law, he would no longer be considered a career offender. To be deemed a career offender, a defendant must be convicted of a "controlled substance offense" and have at least two prior convictions for controlled substance offenses or violent felonies. U.S.S.G. § 4B1.2. The Defendant argues that he no longer meets either of these criteria. [Doc. 989 at 14-15; Doc. 996 at 3-4].[4]

Here, the Defendant was convicted of conspiracy to possess with intent to distribute at least 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and using a communication facility in committing that drug-trafficking conspiracy, in violation of 21 U.S.C. § 843. It appears that if

---

[4] Because the Court ultimately concludes that, under current caselaw, the Defendant was not convicted of a "controlled substance offense," the Court need not reach the Defendant's argument that he does not have two prior convictions for controlled substance offenses or violent felonies.

the Defendant were convicted of either of these offenses today, neither would constitute a "controlled substance offense." The Fourth Circuit has held that a § 846 conspiracy is not a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2(b). United States v. Norman, 935 F.3d 232, 238 (4th Cir. 2019).[5] As for the Defendant's conviction for using a communication facility, the Fourth Circuit has held that a § 843 conviction

---

[5] Section 4B1.2 of the Guidelines defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Application Note 1 of the commentary clarifies that "controlled substance offenses" "include the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). Notwithstanding the wording of this provision, the Court in Norman held that a drug conspiracy conviction under § 846 is not a "controlled substance offense." This interpretation of § 4B1.2 is interesting in light of the fact that this section expressly states that "the term 'controlled substance offense' means an offense under federal . . . law . . . that prohibits . . . the possession of a controlled substance . . . with the intent to . . . distribute . . ." and "include[s] the offense[ ] of . . . conspiring . . . to commit such offense[]" USSG § 4B1.2 and n.1. That defines only one crime: a violation of § 846. Yet the Court in Norman proceeded through a complex categorical analysis to hold that this category of one is actually a category of none. For this reason, other courts of appeals have held that the plain text of U.S.S.G. § 4B1.2, as further defined by Application Note 1, includes § 846 drug conspiracies. See United States v. Lewis, 963 F.3d 16, 24 (1st Cir. 2020), cert. denied, No. 20-7387, 2021 WL 2519339 (U.S. June 21, 2021); United States v. Tabb, 949 F.3d 81, 87 (2d Cir. 2020), cert. denied, No. 20-579, 2021 WL 2519097 (U.S. June 21, 2021). As such, the Fourth Circuit's holding in Norman would appear to represent a departure from ordinary textualism. It is also a clear departure from the Circuit's own precedent. See Norman, 935 F.3d at 242-43 (King, J. concurring in part and dissenting in part) (noting that in United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994), the Fourth Circuit held that § 846 is a controlled substance offense, a holding which the Norman majority referred to merely as an "assumption"). Nevertheless, Norman constitutes binding precedent in the Fourth Circuit, and the Court is obliged to follow it.

9

constitutes a "controlled substance offense" only if the underlying offense "committed, caused or facilitated" by use of the "communication facility" itself was a "controlled substance offense." United States v. Allen, 909 F.3d 671, 674 (4th Cir. 2018) (quoting in part U.S.S.G. § 4B1.2, appl. n.1). Because the underlying offense that was committed by use of the communication facility was the drug-trafficking conspiracy described in Count One—which itself is not a "controlled substance offense"—the Defendant's § 843 conviction would no longer be considered a "controlled substance offense" within the meaning of the career offender guideline if the Defendant were convicted today.

Without a career offender enhancement, the Defendant's criminal history category would be considered today to be III rather than VI. With a criminal history category of III and a total offense level of 38, the Defendant's advisory Guidelines range would be 292 to 360 months. In accord with Concepcion, the Court may consider this difference between the Defendant's Guidelines range and how it would be calculated if he were convicted today. Such consideration, however, would be in the nature of a variance from the Defendant's Guidelines range, see Concepcion, 142 S. Ct. at 2402 n.6, as the range itself remains unchanged.

This factor, however, is of limited value to the Defendant. The intervening change regarding § 846 is based on the concept that one *can* be convicted of conspiracy without committing any underlying act of distributing controlled substances. The Defendant, however, was the *central* player in the distribution of large quantities of crack cocaine. An argument based on a legal fiction is of little value in considering a variance. The Defendant's actual offense conduct is much more germane to the analysis. The Court, nonetheless, takes this into account.

The Court also may consider any post-sentencing rehabilitation. The Defendant has completed approximately 20 educational courses and work assignments while incarcerated and has obtained his GED. [See Doc. 988: Supp. PSR at 3]. He has had only three disciplinary actions while in prison and none in the past twelve years. [See id.]. These factors also allow for some degree of downward variance.[6]

---

[6] The Defendant contends that his sentence should be further reduced to a sentence of time served because his offense level would be even lower if the provisions of the Eliminating a Quantifiably Unjust Application of the Law Act of 2021, H.R. 1693 ("the EQUAL Act") were to be codified into law. [Doc. 996 at 5 n.1]. The EQUAL Act passed the House on September 28, 2021 and remains pending in the Senate. The Court declines to drastically reduce the Defendant's sentence further based solely upon pending legislation that may or may not ever be enacted.

In sum, while the Defendant is eligible for relief under The First Step Act, the Defendant's Guidelines range is unaffected by the retroactive application of the Fair Sentencing Act of 2010. Nevertheless, in light of non-retroactive intervening changes in the law, and in reconsidering the relevant § 3553(a) factors—including, but not limited to, evidence of post-sentencing rehabilitation—the Court in its discretion will reduce the Defendant's term of imprisonment to a term of 336 months.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduction of Sentence [Doc. 986], as amended [Docs. 987, 989] is **GRANTED**, and the Defendant's term of imprisonment is **REDUCED** to a sentence of **THREE HUNDRED AND THIRTY-SIX (336) MONTHS**. The Defendant's term of supervised release is hereby reduced to a term of **EIGHT (8) YEARS**. All other terms and conditions of the Defendant's Judgment [Doc. 347] shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

**IT IS SO ORDERED.**

Signed: October 4, 2022

Martin Reidinger
Chief United States District Judge